[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 20, 2007
THOMAS K. KAHN
CLERK

_____

Nos. 06-12390
06-13724
07-10632
Non-Argument Calendar

_____

BIA Nos. A79-479-795 & A79-479-796

ROSCOE GEORGE CAMPBELL,
HELEN GARNELL CAMPBELL,
DENARIS TENEKO KELLY,
KEDEISHA GEORGETT CAMPBELL,
KAYNEISHA OSHLA CAMPBELL,

                                                    Petitioners,

                          versus

U.S. ATTORNEY GENERAL,

                                                    Respondent.

_____

Petitions for Review of a Decision of the
Board of Immigration Appeals

_____

**(September 20, 2007)**

Before DUBINA, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Roscoe Campbell,[1] a native and citizen of the Bahamas, through counsel, has filed for review of the Board of Immigration Appeals' ("BIA's") denial of his application for withholding of removal, 8 U.S.C. § 1158 and 1231(b)(3), and protection under the Convention Against Torture ("CAT"), 8 C.F.R. § 1208.16(c)(2), and his motions for reconsideration and to reopen the BIA's denial of the same claims.[2] On appeal, Campbell first challenges the IJ's adverse credibility finding.[3] Second, Campbell argues that the BIA erred in affirming the IJ's decision because the IJ's findings were skewed by prejudgment, personal speculation, bias, and conjecture which rose to the level of violating his rights to due process and to present evidence. Third, Campbell argues that the BIA abused

---

[1] Campbell indicated that his spouse and three children were included in his asylum application. We recently held, however, that the withholding of removal statute does not create derivative rights for the spouse of a petitioner. *See Delgado v. United States Att'y Gen.*, 487 F.3d 855, 862 (11th Cir. 2007).

[2] In July 2007, we granted Campbell's motion to consolidate all three of his petitions for review.

[3] The parties agree that we lack jurisdiction to review the denial of Campbell's untimely asylum application. *See Dakane v. United States Att'y Gen.*, 371 F.3d 771, 773 n.3 (11th Cir. 2004) (the statutory limit for filing a petition for review in an immigration proceeding is "mandatory and jurisdictional," and it is not subject to equitable tolling); *see also Stone v. I.N.S.*, 514 U.S. 386, 395, 405, 115 S. Ct. 1537, 1545, 1549 (1995) (holding that the filing deadline for review is not suspended or tolled by a motion to reopen). In addition, because Campbell does not challenge the BIA's denial of his motion for reconsideration of his asylum application, we deem any claims in that regard abandoned. *See Sepulveda v. United States Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) ("When an appellant fails to offer argument on an issue, that issue is abandoned.").

2

its discretion by failing to reopen his removal proceedings in light of the previously unavailable evidence. Last, Campbell argues that the BIA abused its discretion and violated his right to due process by failing to address an argument in his motion to reopen, specifically, that the publication of his asylum claim in the media placed him at greater risk of harm from the Royal Bahamas Defense Force ("Defense Force"), and, therefore, his removal proceedings should be reopened.

## I.

Where the BIA issues a decision, we review only that decision, except to the extent that it expressly adopts the IJ's opinion. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). "Insofar as the Board adopts the IJ's reasoning, we will review the IJ's decision as well." *Id.* Although, here, the BIA did not expressly adopt the IJ's opinion, because the BIA referred to the IJ's reasoning and found it, at least in part, to be supported by substantial evidence, we review the BIA and IJ's decisions.

We review factual determinations, including credibility determinations, using the substantial evidence test. *Forgue v. United States Att'y Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005). We will affirm if the decision "is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (quoting *Al Najjar*, 257 F.3d at 1284). "[W]e review the record evidence in the light most favorable to the agency's decision and draw all

3

reasonable inferences in favor of that decision. *Id.* (quoting *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*)). To conclude that the IJ's or BIA's decision should be reversed, we "must find that the record not only supports that conclusion, but compels it." *Fahim v. United States Att'y Gen.*, 278 F.3d 1216, 1218 (11th Cir. 2002) (quoting *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 480 n.1, 112 S. Ct. 812 (1992)). "[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*).

"In considering a petitioner's claim for withholding of removal, the IJ must determine credibility in the same manner as in asylum cases." *Niftaliev v. United States Att'y Gen.*, 487 F.3d 834, 838 (11th Cir. 2007). Thus, the IJ must make an explicit credibility determination. *See Yang v. United States Att'y Gen.*, 418 F.3d 1198, 1201 (11th Cir. 2005). In this case, the IJ explicitly found Campbell's testimony not credible.

"Once an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's [or BIA's] credibility decision was not supported by 'specific, cogent reasons' or was not based on substantial evidence." *Forgue*, 401 F.3d at 1287. "The trier of fact must determine credibility, and [we] may not substitute its judgment for that of the [IJ or ] BIA with respect to credibility

4

findings." *D-Muhumed v. United States Att'y Gen.*, 388 F.3d 814, 818 (11th Cir. 2004).

"Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of embellishments." *Ruiz v. United States Atty. Gen.*, 440 F.3d 1247, 1255 (11th Cir. 2006). In *Ruiz*, we concluded that the IJ offered "specific, cogent reasons" for his adverse credibility finding when it had not found plausible the applicant's testimony. *Id.* In addition, inconsistencies between a petitioner's testimony and other record evidence supports an adverse credibility finding. *Dailide v. United States Att'y Gen.*, 387 F.3d 1335, 1343 (11th Cir. 2004). While "an adverse credibility determination alone may be sufficient to support the denial of an asylum application," such finding "does not alleviate the IJ's duty to consider other evidence produced by an asylum applicant." *Forgue*, 401 F.3d at 1287.

The burden of proof for an applicant seeking withholding of removal is higher than the burden imposed on an asylum applicant. *Al Najjar*, 257 F.3d at 1292-93. With respect to the aliens who timely seek the later, they may apply for asylum. *See* INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The Attorney General and the Secretary of Homeland Security have discretion to grant asylum if the alien meets the INA's definition of a "refugee." *See* INA § 208(b)(1), 8 U. S. C. § 1158(b)(1).

5

A "refugee" is:

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). The asylum applicant carries the burden of proving statutory "refugee" status. *See Al Najjar*, 257 F.3d at 1284.

An alien is entitled to asylum if he can establish, with specific and credible evidence: (1) past persecution on account of his membership in a particular social group or other statutorily listed factor, or (2) a "well-founded fear" that his membership in a particular social group or other statutorily listed factor will cause future persecution. 8 C.F.R. § 208.13(a)-(b); *Al Najjar*, 257 F.3d at 1287. If a petitioner demonstrates past persecution, he is presumed to have a well-founded fear of future persecution unless the government can rebut this presumption by showing a fundamental change in circumstances in the country or the ability to avoid future persecution by relocating within the country. 8 C.F.R § 208.13(b)(1). If he cannot show past persecution, then the petitioner must demonstrate a well-founded fear of future persecution that is both subjectively genuine and objectively reasonable. *See Al Najjar*, 257 F.3d at 1289. The subjective component can be

6

proved "by the applicant's credible testimony that he or she genuinely fears persecution," while the objective component "can be fulfilled either by establishing past persecution or that he or she has a good reason to fear future persecution." *Id.* (quotation omitted).

Although the INA does not expressly define "persecution" for purposes of qualifying as a "refugee," *see* INA § 101(a)(42), 8 U.S.C. § 1101(a)(42), we have stated that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." *Sepulveda v. United States Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (internal quotation marks and citation omitted); *see also Silva v. United States Att'y Gen.*, 448 F.3d 1229, 1237 (11th Cir. 2006) (holding that the receipt of a "condolence note" alone did not amount to persecution). In determining whether an alien has suffered past persecution, the IJ must consider the cumulative effects of the incidents. *See Ruiz*, 479 F.3d at 766.

The petitioner's well-founded fear of persecution must be on account of, or because of, one of the statutorily listed factors. *See I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483, 112 S. Ct. 812, 816 (1992). To establish the necessary causal connection, the alien must present "specific, detailed facts showing a good reason to fear that he or she will be *singled out* for persecution on account of" a statutorily listed factor. *Al Najjar*, 257 F.3d at 1287 (quotation omitted). Furthermore, we have approved a "country-wide requirement" in which a refugee must first pursue

7

an "internal resettlement alternative" in their own country, or establish that this is not possible, before seeking asylum here. *Mazariegos v. United States Att'y Gen.*, 241 F.3d 1320, 1326-27 (11th Cir. 2001).

In contrast to asylum, an alien will only be entitled to withholding of removal under the INA if he can show that his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. *Mendoza v. United States Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003); *see also* INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). The alien bears the burden of demonstrating that it is "more likely than not" that he will be persecuted or tortured upon his return to the country in question. *Fahim*, 278 F.3d at 1218.

If the alien establishes past persecution based on a protected ground, there is a rebuttable presumption that his life or freedom would be threatened upon return to his country. *See Mendoza*, 327 F.3d at 1287; *see also* 8 C.F.R. § 208.16(b)(1)(i). An alien who has not shown past persecution, however, may still be entitled to withholding of removal if he can demonstrate a future threat to his life or freedom on a protected ground. *See* 8 C.F.R. § 208.16(b)(2). An alien cannot demonstrate that his life or freedom would be threatened if the IJ finds that the alien could avoid a future threat to his life or freedom by relocating to another

part of the proposed country of removal and, under all the circumstances, it would be reasonable to expect the applicant to do so. *Id.* § 208.16(b)(2).

The denial of withholding of removal cannot be based solely on an adverse credibility finding, however, if the applicant offered "other evidence of persecution." *Forgue*, 401 F.3d at 1287-88 (noting that, where an applicant produces other evidence of persecution, the IJ must consider that evidence, and it is not sufficient for the IJ to rely solely on the adverse credibility determination). Nonetheless, the IJ or BIA is not required to discuss every piece of evidence submitted by the petitioner. *See Tan v. United States Att'y Gen.*, 446 F.3d 1369, 1376 (11th Cir. 2006).

To obtain relief under the CAT, the burden is on the applicant to establish that it is "more likely than not" he will be tortured in the country of removal. 8 C.F.R. § 208.16(c)(2); *Sanchez v. United States Att'y Gen.*, 392 F.3d 434, 438 (11th Cir. 2004). Torture is defined as:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

9

*Id.* § 208.18(a)(1). Because the burden regarding withholding of removal and CAT relief is higher than the asylum standard, a petitioner who fails to establish eligibility for asylum is usually unable to carry the burden regarding withholding of removal and CAT relief. *See Forgue*, 401 F.3d at 1288 n.4; *Al Najjar*, 257 F.3d at 1292-93.

In this case, contrary to Campbell's assertion, the record demonstrates that the BIA, like the IJ, clearly made specific findings of fact regarding the adverse credibility determination. The BIA found that the IJ provided "specific, cogent reasons for finding [Campbell] was not credible." In reaching its decision, the BIA relied on the material inconsistencies between Campbell's testimony and the testimony of Drug Enforcement Administration Agent Wright. Accordingly, we conclude that substantial evidence supports the BIA's adverse credibility determination.

Despite Campbell's claim that a February 2000 memorandum by Agent Mitchell corroborated his assertion that he continued to provide drug trafficking intelligence to the agents following their initial meeting, the BIA found that Campbell's counsel "repeatedly has selectively taken Agent Mitchell's letter out of context." The BIA's finding is supported by Agent Mitchell's memorandum, wherein he wrote that, following their initial meeting, Campbell called him on

10

several occasions to inquire about the status of his paperwork and when he would get paid.

Additionally, the record shows that the IJ's adverse credibility finding regarding Campbell's poor recollection of the details of his case was also supported by substantial evidence. Among other things, the record shows that, Campbell had difficulty remembering the details of the events relating to his claim for relief, and he gave inconsistent statements about the facts. Campbell could not remember the number of times he called the DEA agents to offer intelligence, and when he did give an answer, it conflicted with his prior testimony. Campbell gave conflicting testimony about the names and number of Defense Force officers who were arrested as a result of the information he supplied to the DEA. At his removal hearing, Campbell testified that he did not want money in exchange for the intelligence he offered to the DEA, but he later testified that he retained an attorney to collect money for the information he allegedly provided the DEA. In addition, the IJ found implausible Campbell's testimony that he waited six years after he left the Defense Force to provide intelligence to the DEA because "he could not take it" any longer.

The IJ also considered the other evidence in making its adverse credibility determination. *See Tan*, 446 F.3d at 1376. The supplemental materials did not contain any evidence that would compel a reasonable fact finder to find that the

11

IJ's and BIA's denial of Campbell's withholding of removal was not supported by substantial evidence. *See Chen v. United States Att'y Gen.*, 463 F.3d 1228, 1231 (11th Cir. 2006) (quotation omitted). Specifically, the evidence discussed above does not demonstrate that Campbell suffered past persecution or more likely than not will be persecuted or tortured upon his return to the Bahamas based on his membership in a particular social or political group. *See Fahim*, 278 F.3d at 1216. Likewise, because Campbell could not establish that it is "more likely than not" he will be tortured in the Bahamas, his CAT claim would also fail. *See Sanchez*, 392 F.3d at 438. Based on the foregoing reasons, we deny Campbell's petition for review of his claims for withholding of removal and CAT relief. *See Forgue*, 401 F.3d at 1287-88.

## II.

We review *de novo* a due process violation claim in removal proceedings and administrative appeals. *Lonyem v. United States Att'y Gen.*, 352 F.3d 1338, 1341-1342 (11th Cir. 2003).

Due process is satisfied only by a full and fair hearing. *Ibrahim v. I.N.S.*, 821 F.2d 1547, 1550 (11th Cir. 1987). "To prevail . . . on a due process challenge to a [removal] proceeding, an alien must show substantial prejudice." *Id.* An alien can demonstrate substantial prejudice by showing that the outcome would have been different had the due process violation not occurred. *Id.* "[A] party to an

immigration case . . . is entitled to a full and fair hearing-not an idyllic one."

*Aguilar-Solis v. I.N.S.*, 168 F.3d 565, 569 (1st Cir.1999) (persuasive authority).

We conclude from the record that the IJ did not deny Campbell due process nor deny him the right to present evidence. While it is true that the IJ interrupted Campbell's testimony throughout the hearing, a review of the record indicates that the purpose of most of the interruptions was to gain more clarification with regard to his testimony. The IJ's inappropriate conduct was not limited to Campbell, but was directed toward the government's attorney, too, and, therefore, it does not necessarily show bias against him as much as improper conduct generally. Furthermore, the vast majority of the IJ's interruptions and questions were probative as to the issues raised by Campbell. Moreover, Campbell neither objected to the IJ's questions or conduct during the hearing, nor points to any instances in the record where he was substantially prevented from testifying as to his story. Additionally, the IJ went as far as to grant Campbell a two-month continuance so that he could bolster his claim.

While it is true that the IJ appeared impatient and annoyed by some of Campbell's responses and made some unnecessary and unprofessional comments at the hearing and in his oral decision, Campbell has not shown that the outcome would have been different in the absence of those comments and interruptions. *Cf. Ibrahim*, 821 F.2d at 1550 (failing to show prejudice by the ruling made in the

alien's absence). In fact, the BIA found that the record supported the IJ's adverse credibility ruling. Furthermore, even in the absence of an adverse credibility ruling, Campbell did not show that he was subjected to past persecution, a well-founded fear of future persecution, or that he was entitled to CAT relief. Moreover, the BIA admonished the IJ for his sarcasm, which it found was inappropriate. Therefore, Campbell has not demonstrated substantial prejudice, and we deny his petition in this respect.

**III.**

We normally review the BIA's denial of a motion to reopen for an abuse of discretion. *Al Najjar*, 257 F.3d at 1302. We will uphold a determination of the BIA if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Elias-Zacarias*, 502 U.S. at 481, 112 S. Ct. at 815 (1992) (quoting 8 U.S.C. § 1105a(a)(4)). "Judicial review of denials of discretionary relief incident to deportation proceedings, including motions to reopen, is limited to determining 'whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious.'" *Garcia-Mir v. Smith*, 766 F.2d 1478, 1490 (11th Cir. 1985) (quoting *Jarecha v. I.N.S.*, 417 F.2d 220, 224 (5th Cir. 1969)). The BIA abuses its discretion when its decision "provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or

14

conclusory statements." *Mickeviciute v. I.N.S.*, 327 F.3d 1159, 1162 (10th Cir. 2003) (quotation omitted) (persuasive authority).

"[T]here are at least three independent grounds upon which the Board may deny a motion to reopen: 1) failure to establish a prima facie case; 2) failure to introduce evidence that was material and previously unavailable; and 3) a determination that despite the alien's statutory eligibility for relief, he or she is not entitled to a favorable exercise of discretion." *Al Najjar*, 257 F.3d at 1302. Under 8 C.F.R. § 1003.2(c)(1), "[a] motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." In discussing the judicial review of a motion to reopen, we noted that:

> [t]he provision is framed negatively, by directing the Board not to reopen unless certain showings are made. It does not affirmatively require the Board to reopen the proceedings under any particular condition. Thus, the regulations may be construed to provide the Board with discretion in determining under what circumstances proceedings should be reopened.

*Al Najjar*, 257 F.3d at 1301 (alterations, citations, and internal quotations omitted).

In *Brunner v. United States*, 70 Fed. Cl. 623, 625 (Fed. Cl. 2006), a civil case before a trial court on a motion for summary judgment, the plaintiff sued the DEA for breach of an oral contract to compensate him for assistance he rendered against drug traffickers. In that case, it was undisputed that the plaintiff entered

15

into an official cooperating agreement with the DEA to act as a confidential source. *Id.* Ultimately, the court held that no contract existed between the DEA and the plaintiff concerning a promise to pay awards for information which led to either indictments or seizure and forfeiture of property due to lack of contracting authority and lack of ratification, but that the DEA agents did possess the implied authority to bind the DEA in a contract paying a salary and expenses to plaintiff. *Id.* at 649.

In this case, Campbell argues that the BIA abused its discretion by failing to reopen his removal proceedings in light of the previously unavailable evidence, namely a post-removal hearing psychological evaluation indicating that he suffers from Post Traumatic Stress Disorder and major depressive disorder. We conclude that the BIA's finding that this evidence was neither new nor unavailable was limited to the exercise of administrative discretion and was not arbitrary or capricious, and, therefore, the BIA did not abuse its discretion. *See Garcia-Mir*, 766 F.2d at 1490. Moreover, the BIA's findings in this regard were supported by rational explanation and reasoning. First, the BIA found, and the evaluation report confirms, that Campbell's psychological evaluation was based on the same symptamotology he experienced after arriving in the United States in 1999. Second, the BIA observed that Campbell did not offer any explanation as to why

16

he or his attorney failed to previously seek such an evaluation if either believed it to be relevant to his application for relief.

In addition, contrary to Campbell's assertion that the BIA "ignored his explanation that a psychological evaluation only became relevant and necessary after the [IJ's] continual interruption and mocking of [him]" the record shows otherwise. Specifically, the record shows that Campbell was aware of his failure to provide a cogent recitation of the facts long before he moved to reopen based on the psychological evaluation, and that he repeatedly related that failure to the IJ's conduct during the removal proceedings. For instance, Campbell made such arguments in his briefs to the BIA on direct appeal and in support of his motion for reconsideration.

Furthermore, Campbell's reliance on *Brunner* is misplaced. The case does not establish that Campbell was *prima facie* eligible for any of the relief he sought. Accordingly, we deny Campbell's petition in this respect.

IV.

In his motion to reopen, Campbell argued that he qualified as a refugee *sur place* because he met the statutory requirements for asylum and withholding of removal when his persecutor became aware of, and was angered by, international media coverage surrounding his claims. In support of this claim, Campbell submitted an article published in the Miami New Times. The BIA found the article

17

to be duplicative of previously submitted evidence offered in support of his application. The BIA did not abuse its discretion in so finding. Moreover, on appeal, Campbell concedes that the article chronicled the facts of his experiences in the Bahamas and throughout the asylum application process, and, therefore, the article does not qualify as material evidence that was not available and could not have been discovered or presented at the former hearing.

Furthermore, Campbell's reliance on *Lusingo v. Gonzales*, 420 F.3d 193 (3d Cir. 2005), and *Matter of Mogharrabi*, 19 I. & N. Dec. 439 (BIA 1987), for the proposition that the BIA abused its discretion in denying his motion to reopen his removal based on the increased threat of danger that arose from media coverage of his asylum claim is without merit. These cases are inapposite to the facts and circumstances here. *Lusingo* involved a petition for review of the BIA's denial of a direct appeal from the IJ's decision, and evidence showed that the petitioner's case was widely publicized in his home country where it was likely that the government would persecute him if he were returned. *Lusingo*, 420 F.3d at 194, 201-02. Similarly, *Mogharrabi* involved a petition for review of the BIA's denial of a direct appeal of the IJ's decision, and evidence showed that the petitioner was involved in an altercation at an embassy with an employee of his home country's government, that he participated in government demonstrations, and that opponents of the Ayatollah Khomeini are often persecuted for their opposition. *Mogharrabi*,

18

19 I. & N. Dec. 439. Thus, unlike in Campbell's case where there was no evidence that the Bahamian government was aware of the media coverage he received in the United States, and that if he returned he would be persecuted as a result thereof, in the cases cited to us by Campbell, there was undisputed ample evidence that the petitioner's home country government was aware of the media coverage in the United States and that a reasonable person in his position would fear persecution if returned. Accordingly, we conclude that the BIA did not abuse its discretion nor did it violate his right to due process in this respect.

## V.

For the above-stated reasons, we deny Campbell's petition for review.

**PETITION DENIED.**